Filed 11/18/20  In re D.S. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re D.S. et al., Persons Coming Under the Juvenile Court Law. | B301269 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 19CCJP03268A-B) |
| Plaintiff, | |
| v. | |
| J.S., | |
| Objector and Appellant, | |
| R.S., | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Mary E. Kelly, Judge. Affirmed.

Mitchell Keiter, under appointment by the Court of Appeal, for Objector and Appellant.

Janette Freeman Cochran, under appointment by the Court of Appeal, for Defendant and Respondent.

_____

J.S. (mother) appeals a three-year restraining order entered against her under Welfare and Institutions Code section 213.5.[1] Mother does not challenge the portions of the order requiring her to stay away from Richard S. (father) or father's girlfriend. Instead, her sole contention on appeal is that the juvenile court erred when it included the children, D.S. (son) and R.S. (daughter), as protected persons under the restraining order.[2] Finding substantial evidence to support the restraining order, we affirm.

_____

[1] All statutory references are to the Welfare and Institutions Code, unless stated otherwise.

[2] After mother filed her opening brief in which she challenged the court's decision to include the children as protected parties in the restraining order, the Department notified us that because it had taken no position on the matter below, it would not be filing a respondent's brief. The Department reviewed the procedural history and suggested that because the restraining order had been requested by father, he would be the appropriate respondent on appeal. We appointed counsel to represent father, and he filed a

# FACTUAL AND PROCEDURAL BACKGROUND

*Facts*

Mother and father were married in 2009, and they divorced in 2015. Son was born in March 2010 and daughter was born in September 2013.[3] Mother and father shared custody of the children pursuant to a custody order that prevented mother from permitting contact between the children and her boyfriend, who was a registered sex offender with a 2016 conviction for lewd or lascivious acts with a minor (Pen. Code, § 288, subd. (a)).

On May 8, 2019, the children were at mother's home, and father learned that mother's boyfriend was present. Father drove his motorcycle to mother's home, and his girlfriend followed with a car. When father arrived, he started filming. Mother's boyfriend was in his car talking to mother, and father stated to them that the boyfriend was not supposed to be within 100 yards of the children, so father would be taking the children. The boyfriend responded, "Take the kids. What do we care?" Then mother said, "You're going to take the kids? You're going to take the f—ing kids? Go take the kids." Mother ran to Father's

---

respondent's brief. The children are not parties to this appeal.

[3] Father has one other child, who is the subject of an unrelated dependency proceeding in Orange County.

motorcycle and tried to kick it over, but Father caught it. Mother then hit father, who was still wearing his motorcycle helmet, on the head and scratched him on the wrist. The boyfriend drove away while father waited for mother to bring the children out of the house. When son came out, he reported mother had slapped him in the face for not moving fast enough. The Los Angeles County Department of Children and Family Services (Department) received a referral the following day.

A social worker interviewed son and daughter separately on May 15, 2019, at their school. Son, who was in third grade, stated he knew why the social worker was there: because his mother had attacked his father. Son reported that mother hits him in the face when she is upset and has also hit him in the past with a remote control. He said mother calls him a "bitch" when she is cranky or mad, which happens a lot. When asked about thoughts of self-harm, son stated he hates himself and wants to die because things would be better if he was dead because his mother is mean to him and it makes him upset. Son also reported that mother would hit daughter, and pull or grab her by the ear. He said he feels safe with father and father's girlfriend. Daughter was in kindergarten in May 2019. When the social worker explained her role to daughter, daughter stated "Then you must be here because my mommy hits me all the time." Daughter reported mother hits her every day, and that when daughter tells mother to stop hitting her, mother does not listen. Daughter also said that mother hits son in the face,

4

and did so the other day before the children went to father's house. Daughter said mother's boyfriend comes to mother's home and sleeps on the couch. Daughter does not like mother's boyfriend hugging her because he squeezes too hard. Daughter felt safe with father and his girlfriend; father does not hit her, instead takes things away when she gets into trouble.

In later interviews in July 2019, son and daughter confirmed that mother slapped son during the May 8, 2019 incident. Son also said he was scared of mother because she is mean.

*Procedural history*

On May 16, 2019, father obtained a temporary restraining order (TRO) from a family law court protecting himself, his girlfriend, son, and daughter from mother. The TRO was valid until a hearing, scheduled for May 31, 2019.

On May 23, 2019, the Department filed a petition alleging mother placed the children at risk of physical harm, based on her conduct of striking son and allowing mother's boyfriend unlimited access to the children. At the initial hearing in the juvenile court on May 24, 2019, the court ordered the children detained from mother, and modified the TRO to allow mother to have monitored three-hour visits, three times a week. It also set a May 31, 2019 hearing on father's request for a permanent restraining order in the juvenile court.

5

On May 31, 2019, pursuant to a request from father, the court found good cause to continue the restraining order hearing to the date of the adjudication hearing, July 17, 2019.  On that date, the court continued adjudication, but heard argument on father's restraining order request.  Mother argued that a restraining order was not warranted, given the nature of the May 8, 2019 incident and that the children were inside the home while the incident occurred outside.  Father argued that a restraining order was still necessary.  Minor's counsel stated she was not asking for the restraining order.  The Department submitted.  The juvenile court found that the egregious circumstances, including mother's outburst on May 8 and her continued involvement with a registered sex offender, warranted a restraining order.  The court issued a three-year restraining order against mother, listing father, his girlfriend, and son and daughter as protected persons.  The order included a stay-away order prohibiting mother from coming within 100 yards of the protected persons, their home, workplaces, schools, and vehicles; except to facilitate monitored visitation with the children, three times per week for at least three hours.  Mother filed a notice of appeal from the restraining order on August 2, 2019.

## DISCUSSION

Mother contends there is no substantial evidence to support the portion of the restraining order protecting the children. We disagree.

*Relevant law and standard of review*

Section 213.5 and rule 5.630 of the California Rules of Court[4] govern issuance of restraining orders in juvenile proceedings. Under section 213.5, subdivisions (a) and (d)(1), the juvenile court has exclusive authority to enjoin any person, including a parent, for a period up to three years, from "molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, harassing, telephoning, including, but not limited to, making annoying telephone calls as described in Section 653m of the Penal Code, destroying the personal property, contacting, either directly or indirectly, by mail or otherwise, coming within a specified distance of, or disturbing the peace of the child . . . ." Rule 5.630(a), authorizes the juvenile court to issue restraining orders as provided in section 213.5 after a dependency petition has been filed under section 300. Rule 5.630(f)(1) provides at the hearing for a restraining order, "[p]roof may be by the application and any attachments, additional declarations or documentary evidence, the

---

[4] All rule references are to the California Rules of Court.

contents of the juvenile court file, testimony, or any combination of these."

"A restraining order under section 213.5 is reviewed for an abuse of discretion.  The juvenile court's factual findings are upheld if they are supported by substantial evidence.  [Citation.]  [¶]  Under section 213.5, a juvenile court may issue an order enjoining any person from contacting a child if such contact would jeopardize the child's safety."  (*In re A.M.* (2019) 37 Cal.App.5th 614, 619.)

Issuance of the restraining order does not require evidence of previous stalking, attacks, or infliction of physical harm; nor does it require evidence of a reasonable apprehension of future physical abuse.  It is sufficient to show that the restrained person "disturb[ed] the peace" of the protected person.  (§ 213.5, subd. (a); *In re Bruno M.* (2018) 28 Cal.App.5th 990, 997, quoting *Perez v. Torres-Hernandez* (2016) 1 Cal.App.5th 389, 401 ["*disturbing the peace* means '"conduct that destroys the mental or emotional calm of the other party"'"].)  Evidence a parent has previously inflicted physical harm on a child is "'certainly sufficient,'" on its own, to justify the issuance of a protective order under section 213.5, subdivision (a).  (*In re Bruno M.*, *supra*, 28 Cal.App.5th at p. 997; *In re B.S.* (2009) 172 Cal.App.4th 183, 193.)  Courts have upheld juvenile dependency restraining orders even when there has been no violent behavior or threats of violent behavior to the protected person.  Abusing a mother in the presence of children, for example, even if the children were not

8

physically harmed, is sufficient evidence to support a restraining order. (*In re Bruno M.*, at p. 997; *In re B.S.*, at p. 194.) Spying on a child, attempting to enter the caregiver's home, appearing at the child's school, threatening to take the child from the foster home, and otherwise attempting to gain unauthorized access to a dependent child constitutes substantial evidence to support the issuance of a restraining order, even if there has been no physical abuse or discipline. (See *In re Brittany K.* (2005) 127 Cal.App.4th 1497, 1512; *In re Cassandra B.* (2004) 125 Cal.App.4th 199, 212.)

Mother argues that a course of conduct is necessary to support a restraining order, and that the facts of this case are more akin to those in *In re C.Q.* (2013) 219 Cal.App.4th 355 and *In re N.L.* (2015) 236 Cal.App.4th 1460, where the appellate court reversed portions of restraining orders protecting the minor children for lacking sufficient evidentiary support. First, we find no legal support for mother's argument that a restraining order is only warranted when a parent has engaged in a course of harmful or impermissible conduct, as opposed to a single incident. Second, the evidence here includes statements by the children that support an inference that mother has hit them on other occasions, in addition to hitting son in connection with mother's outburst against father on May 8, 2019. Lastly, the facts of *In re C.Q.* and *In re N.L.* are distinguishable from the facts of the current case. In *In re C.Q.*, while there was evidence that the father had been

9

violent towards the mother, the three daughters (who were between ages 11 and 16) acknowledged that their parents argued, but denied any domestic violence, and in fact pressured mother not to report father because they wanted to continue to see father, who would buy them whatever they wanted. (*In re C.Q.*, at pp. 358–359.) At the hearing on the restraining order, minor's counsel reported that minors were so unhappy with mother for listing them as protected persons, they were not longer speaking to mother. (*Id.* at p. 361, fn. 9.) In *In re N.L.*, the mother had made violent threats towards the father, but the court noted that there was "no evidence in the record that mother had engaged in any violent or dangerous conduct toward, or made any threats to, N.L." (*In re N.L.,* at p. 1468.)

Here, there was substantial evidence to support the court's decision to include the children as protected persons in the restraining order. The juvenile court's order is certainly supported with sufficient "evidence that [mother] 'disturbed the peace' of [son and daughter]." (*In re Bruno M.*, *supra*, 28 Cal.App.5th at p. 997.) Both son and daughter reported hitting or slapping by mother. Son, who was only nine years old at the time, said mother was often cranky or mad, and that she would call him a bitch and hit him on the face. Daughter reported that mother hit her every day; that mother would not listen when daughter told her to stop; and that daughter did not feel safe with her mother. On May 8, 2019, mother's anger resulted in violence directed toward father, his property, and mother hitting son. We therefore

10

find substantial evidence supports the court's issuance of the restraining order protecting the children from contact with mother outside the confines of monitored visitation.

## DISPOSITION

The July 17, 2019 restraining order is affirmed.


MOOR, J.

We concur:



RUBIN, P. J.



KIM, J.